**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 08-83029-JAC11 |
| **BILL HEARD ENTERPRISES, INC.,** *et al.*, | CHAPTER 11 |
| **Debtors.** / | |
| **BMW FINANCIAL SERVICES, NA, LLC, d/b/a ALPHERA FINANCIAL SERVICES,** | |
| **Plaintiff,** | |
| **COLUMBUS BANK & TRUST COMPANY** | |
| **Intervening Plaintiff** | |
| **v.** | **ADVERSARY PROCEEDING NO. 09-80117** |
| **BILL HEARD ENTERPRISES, INC., LANDMARK CHEVROLET, LTD., BILL HEARD CHEVROLET, INC. – HUNTSVILLE, BILL HEARD CHEVROLET COMPANY, TOM JUMPER CHEVROLET, INC., BILL HEARD CHEVROLET CORPORATION – ORLANDO, BILL HEARD CHEVROLET AT TOWN CENTER, LLC, BILL HEARD CHEVROLET, INC. – BUFORD, BILL HEARD CHEVROLET CORP. – NW LAS VEGAS, BILL HEARD CHEVROLET CORP. – LAS VEGAS, BILL HEARD CHEVROLET, INC. – COLLIERVILLE,** | |
| **Defendants.** / | |

**MEMORANDUM OPINION**

This matter having come before the Court on cross motions for summary judgment filed

by William F. Perkins in his capacity as the Liquidating Trustee for the Debtors (the

1

US2008 1085720.1

"Liquidating Trustee's Motion"), BMW Financial Services NA, LLC, d/b/a Alphera Financial Services, Plaintiff in the above styled adversary proceeding ("the Alphera Motion"), and Columbus Bank & Trust Company, Intervenor Plaintiff (the "CB&T Motion," together with the Liquidating Trustee Motion and the Alphera Motion, the "Motions") in the above styled adversary proceeding (the "Adversary"); and it appearing that this Court has jurisdiction over the Motions pursuant to 28 U.S.C. §§ 157 and 1334 and venue is proper in this district pursuant to 28 U.S.C. §1409; and this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that granting the Liquidating Trustee Motion, denial of the Alphera Motion and denial of the CB&T Motion are warranted; and it appearing that notice of the Motions has been given, and that no other or further notice need be given; and for sufficient cause shown, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1.     On September 28, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[1]

2.     Prior to the Petition Date, the Debtors owned and operated fourteen Chevrolet dealerships located in seven different states.  The Debtors were in the business of operating automotive dealership franchises for the sale of new and used motor vehicles to consumer and commercial customers.

---

[1] In addition to Bill Heard Enterprises, Inc., the Debtors include the following entities: (i) Bill Heard Chevrolet Company, (ii) Tom Jumper Chevrolet, Inc., (iii) Bill Heard Chevrolet, Inc. - Huntsville, (iv) Landmark Chevrolet, Ltd., (v) Bill Heard Chevrolet, Ltd., (vi) Bill Heard Chevrolet Corporation Nashville, (vii) Bill Heard Chevrolet Corporation - Orlando, (viii) Bill Heard Chevrolet, Inc. - Union City, (ix) Bill Heard Chevrolet at Town Center, LLC, (x) Bill Heard Chevrolet, Inc. - Collierville, (xi) Bill Heard Chevrolet, Inc. - Scottsdale, (xii) Bill Heard Chevrolet, Inc. - Plant City, (xiii) Bill Heard Chevrolet, Inc. - Buford, (xiv) Bill Heard Chevrolet Corporation - Las Vegas, (xv) Bill Heard Chevrolet Corporation - N.W. Las Vegas, (xvi) Twentieth Century Land Corp., (xvii) Enterprise Aviation, Inc., (xviii) Century Land Corporation, (xix) Century Land Company - Tennessee, (xx) Bill Heard Management, LLC, (xxi) Landmark Vehicle Mgt., LLC, (xxii) Georgia Services Group, LLC, (xxiii) Columbus Transportation, LLC, and (xxiv) Airport Chevrolet, Inc. Airport Chevrolet, Inc. filed bankruptcy on October 12, 2008.

2

US2008 1085720.1

3.     Pre-petition, BMW Financial Services NA, LLC, d/b/a Alphera Financial Services ("Alphera") provided floor plan financing to Debtors Bill Heard Chevrolet, Inc. – Union City, Bill Heard Chevrolet, Inc. – Plant City, and Bill Heard Chevrolet, Ltd. (the "Sugar Land Debtor") (collectively, the "Alphera Debtors") pursuant to a Master Inventory Financing Agreement and related agreements, dated on or about July 28, 2008 (the "Alphera Floorplan Agreements"). In connection with the Alphera Floorplan Financing, Alphera asserted a perfected security interest in virtually all of the non-real estate assets of the Alphera Debtors, including all of the motor vehicle and parts inventories, equipment, fixtures, accounts, general intangibles and other personal property owned by each of the Alphera Debtors and all proceeds thereof. The total amount of the Alphera Floorplan Financing, including debtor-in-possession financing provided by Alphera to the Alphera Debtors, exceeded $59 million.

4.     GMAC LLC ("GMAC") provided floor plan financing to the defendants in this adversary proceeding ("the GMAC Debtors") pursuant to (1) a Second Master Amended and Restated Cross-Default, Cross-Collateralization, and Cross-Guaranty Agreement, effective as of August 21, 2007, (ii) a Master Inventory Financing and Security Agreement, dated August 21, 2007, and (iii) a Master General Security Agreement, effective February 18, 2004 (the "GMAC Floorplan Agreements"). The total GMAC Financing, including debtor-in-possession financing provided by GMAC to the GMAC Debtors, exceeded $165 million.

5.     GMAC obtained a perfected first-priority security interest in virtually all non-real estate assets of the GMAC Debtors, including all motor vehicle parts, inventories, equipment, fixtures, accounts, general intangibles and other personal property owned by each of the GMAC Floorplan Debtors and all proceeds thereof ("GMAC Collateral").

US2008 1085720.1

6.     In addition, GMAC asserted a security interest in the motor vehicle and parts inventory, accounts and general intangibles of the Sugar Land Debtor (the "Contested Sugar Land Collateral") arising out of its relationship as floor plan lender to the Sugar Land Debtor from the 1980's through May 2007 and further claimed that its security interest had priority over the security interest of Alphera in the Contested Sugar Land Collateral because of a prior UCC-1 financing statement covering the Contested Sugar Land Collateral still of record with the Secretary of State of Texas.

7.     On October 3, 2008, GMAC commenced an adversary proceeding styled GMAC LLC v. BMW Financial Services NA, LLC d/b/a Alphera Financial Services, et al., Adversary Proceeding No. 08-80152 (the "Sugar Land Proceeding"), by filing a complaint seeking to determine the validity, priority and extent of interests in the Contested Sugar Land Collateral. Alphera answered the complaint asserting various affirmative defenses and counterclaims, but not asserting an affirmative defense or counterclaim seeking marshaling.

8.     On October 29, 2008, the Court entered the Consent Order Granting Expedited Motion of Alphera Financial Services For Relief from the Automatic Stay pursuant to 11 U.S.C. § 362(d)(1) in the Debtors' main bankruptcy case, (the "Stay Relief Order").  [Docket No. 333] Following the Stay Relief Order, the Contested Sugar Land Collateral was liquidated and its proceeds were placed in escrow.

9.     Although Alphera disputed GMAC's claim to the Contested Sugar Land Collateral, in order to protect its asserted interest in the collateral and minimize the expense of further litigation, Alphera entered into a settlement with GMAC in May of 2009, (the "Sugar Land Settlement"). Pursuant to the Sugar Land Settlement, GMAC agreed to release any and all claims to the Contested Sugar Land Collateral in consideration of a distribution of $3,320,743.00

4

US2008 1085720.1

(the "Sugar Land Settlement Proceeds"), amounting to roughly 15% of the total net proceeds of the Contested Sugar Land Collateral.

10.     On May 18, 2009, GMAC and Alphera filed the Consent Motion of Alphera Financial Services and GMAC, LLC for an Order Authorizing and Directing Final Disbursements of Escrowed Funds.  [Docket No. 1783]

11.     On May 18, 2009, the Court entered that Order on Consent Motion of Alphera Financial Services and GMAC LLC Authorizing and Directing Final Disbursement of Escrowed Funds [Docket No. 1785] authorizing, among other things, disbursement of the Sugar Land Settlement Proceeds to GMAC from the total net proceeds of the Contested Sugar Land Collateral pursuant to the terms of the Sugar Land Settlement.

12.     Following the Sugar Land Settlement, GMAC continued to liquidate its collateral by, among other things, commencing litigations and executing on collateral or the proceeds of such collateral.

13.     On or about October 24, 2009, GMAC, General Motors Company ("New GM"), Motors Liquidation Company (f/k/a General Motors Corporation ("Old GM"), the Debtors and the Committee entered into a settlement agreement (the "GM/GMAC Global Settlement") and moved for court approval of such settlement. [Docket No. 2670]  The GM/GMAC Global Settlement had the effect of fully and finally resolving GMAC's claims against the Debtors by, among other things, waiving any other claims GMAC may have against the Debtors.  On November 4, 2009, the Court entered the Order Approving Compromise and Settlement Agreement [Docket No. 2708], which approved the GM/GMAC Global Settlement.

14.     Alphera claims that it has a deficiency of approximately $1.2 to $1.3 million and attributes its deficiency to the payment of the Sugar Land Settlement Proceeds to GMAC

US2008 1085720.1

pursuant to the terms of the Sugar Land Settlement. Because GMAC's has waived any other claims in the Debtors' cases, Alphera takes the position that it may now be equitably subrogated to GMAC and can assert GMAC's collateral position against the GMAC Debtors. If successful, Alphera's claim would reduce the recovery to unsecured creditors in these cases by the full amount of its deficiency claim.

15. CB&T, who has intervened as plaintiff against the Liquidating Trustee in this Adversary, asserts equitable subrogation through three standby letters of credit (the "LOCs"), each issued in the face amount of $2,000,000.00, on behalf of Bill Heard Chevrolet, Inc.—Plant City, Bill Heard Chevrolet, Inc.—Union City and the Sugar Land Debtor, none of which are included in the GMAC Debtors. Alphera was the beneficiary under each of these letters of credit. Since the Petition Date, Alphera has drawn down on all of the LOCs. Upon presentation by Alphera on October 2, 2008, CB&T paid to Alphera the entire face amount of $2,000,000.00 on each of the three letters of credit for a total of $6,000.000.00. CB&T now asserts that it is subrogated to GMAC by virtue of being subrogated to Alphera. If successful, CB&T would also reduce the recovery to creditors in these cases by the full amount of its deficiency claim up to the cap of $3,320,744.00. CB&T's claims to equitable subrogation in this Adversary are wholly dependent upon the success of Alphera's claims to equitable subrogation. Whether Alphera obtained CB&T's consent to the GMAC settlement or consulted with CB&T prior to the settlement giving rise to Alphera's subrogation claim is not in evidence. CB&T's deficiency claim in this case is in excess of $10 million.

16. The parties entered into a pre-trial order for briefing on the Motions and, on January 11, 2010, the Court held a hearing on the Motions.

US2008 1085720.1

## CONCLUSIONS OF LAW

**A.      Standard for Grant of a Motion for Summary Judgment**

17.      The standard for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to this Adversary by Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure.

18.      Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179 (11th Cir. 2002).

19.      The evidence and all factual inferences therefrom must be viewed in the light most favorable to the party opposing the motion and all reasonable doubts about the facts must be resolved in favor of the non-moving party.  Andreini & Co. v. Pony Express Delivery Servs., Inc. (In re Pony Express Delivery Servs., Inc.), 440 F.3d 1296, 1300 (11th Cir. 2006); see also Loren v. Sasser, 309 F.3d 1296, 1301-02 (11th Cir. 2002); Hyman, 304 F.3d 1179  (citing Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999)).  However, "[w]hen a motion for summary judgment has been made properly, the nonmoving party may not rely solely on the pleadings, but . . . must show that there are specific facts demonstrating that there is a genuine issue for trial."  Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990).  The nonmovant "'has the burden of making a showing sufficient to establish the existence of each essential element to the nonmovant's case on which he will bear the burden of proof at trial.'"  United States v. 2204 Barbara Lane, 960 F.2d 126, 129 (11th Cir. 1992)  (citation omitted).  Where multiple parties seek summary judgment, the Court must consider each motion independently and apply the

7

US2008 1085720.1

applicable standards to each motion to determine whether summary judgment is appropriate under the individual motions. Smith v. Fendley (In re Allied Sign Co., Inc.), 280 B.R. 694 (Bankr. S.D. Ala. 2001).

20.     All parties are in agreement that there are no genuine issues of material fact remaining for trial. The Court finds that summary judgment is due to be entered in favor of the Liquidating Trustee and denied with respect to Alphera and CB&T, because neither Alphera nor CB&T, by extension, can satisfy the standard for equitable subrogation under any applicable law. The Liquidating Trustee is entitled to judgment as a matter of law in its favor and dismissal of the claims asserted by each of Alphera and CB&T.

**B.     Equitable Subrogation Generally**

21.     Equitable subrogation, a type of subrogation,[2] "is a legal fiction 'whereby' an obligation, extinguished by a payment made by a third person, is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another." Murray v. The Cadle Co., 257 S.W.3d 291, 299 (Tex. App. 2008) (citing First Nat'l Bank v. Ackerman, 8 S.W. 45, 47 (Tex. 1888)).

22.     The purpose of equitable subrogation is to obtain substantial justice, to prevent wrongdoing or unjust enrichment, and to accomplish what is just and fair as between the parties. Acuity v. McGhee Eng'g, Inc., 2008 WL 5234743 (Tenn. Ct. App. Dec. 15, 2008); Bankers Trust Co. v. Collins, 124 S.W.3d 576, 580 (Tenn. Ct. App. 2003); AT&T Technologies, Inc. v. Reid, 855 P.2d 533, 535 (Nev. 1993) (citing Laffranchini v. Clark, 153 P. 250, 252 (Nev. 1915)).

---

[2] Subrogation may arise by (1) contract, (2) statute, or (3) by application of principles of equity. Blankenship v. Estate of Bain, 5 S.W.3d 647, 650 (Tenn. 1999). Only the latter, known as equitable subrogation, is implicated in this Adversary.

8

US2008 1085720.1

23.     Subrogation, generally, is defined as the "substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." Castleman Constr. Co. v. Pennington, 432 S.W.2d 669, 674 (Tenn. 1968); Bonofiglio v. Hoey (In re Hoey), 364 B.R. 427, 432 (Bankr. S.D. Fla. 2005) ((citing Fortenberry v. Mandell, 271 So. 2d 170 (Fla. 4th DCA 1972)) ("Equitable subrogation arises by operation of law where one pays a debt owed by another under circumstances in which he is in equity entitled to the security held by the creditor whom he has paid"); In re Hubbard, 89 B.R. 920, 922 (Bankr. N.D. Ala. 1988) (noting that "[n]umerous Alabama cases have invoked the doctrine of subrogation where one advancing money to discharge a prior lien on property is entitled to be subrogated to the rights of such prior lien as against intervening lienors").  In its most basic form, subrogation means that party A is substituted for party B, and party A can then raise the rights party B had against party C. Blankenship, 5 S.W.3d at 650; see also Dade County Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999) ("As a result of equitable subrogation, the party discharging the debt stands in the shoes of the person whose claims have been discharged and thus succeeds to the right and priorities of the original creditor.").

## C.     State Common Law Applies

24.     An initial question concerns what law should apply.  When applying the doctrine of equitable subrogation, bankruptcy courts typically look to the law of the forum state. See In re CUA Autofinder, LLC, 387 B.R. 906, 912 (Bankr. M.D. Ga. 2008) (citing Hamada v. Far East Nat'l Bank (In re Hamada), 291 F.3d 645, 651 (9th Cir. 2002)); Celotex Corp. v. Allstate Ins. Co. (In re Celotex Corp.), 289 B.R. 460 (Bankr. M.D. Fla. 2003) (applying Florida law). However, due to the locations of the various dealerships of the GMAC Debtors and their various places of incorporation, the potential candidates could arguably be the law of Alabama, Florida,

9

US2008 1085720.1

Georgia, Nevada, Tennessee or Texas. Nevertheless, the standards of equitable subrogation in the various jurisdictions are exceedingly similar and the parties to this proceeding agree that none of the differences in the law of these jurisdictions would alter the outcome of this case.

25. The Court will therefore emphasize equitable subrogation as it is expressed under Alabama law, the forum state, but will also cite to the law of other jurisdictions. Courts have formulated the elements of equitable subrogation in a variety of ways.[3] Under Alabama law, the elements of equitable subrogation are expressed as follows: (1) the money is advanced at the instance of the debtor in order to extinguish a prior [e]ncumbrance; (2) the money is used for that purpose with the just expectation on the part of the lender for obtaining security of equal dignity with the prior [e]ncumbrance; (3) the whole debt must be paid before subrogation can be enforced; (4) the lender must be ignorant of . . . intervening lien[s]; and (5) the intervening lienor[s] must not be burdened or embarrassed." Ex Parte Lawson, 6 So. 3d 7, 12 (Ala. 2008) (quoting Collateral Inv. Co. v. Pilgrim, 421 So. 2d 1274 (Ala. Civ. App. 1982)); See also Foster

---

[3] Florida: "Equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party." Dade County Sch. Bd., 731 So. 2d at 646 (citations omitted); see also Fibreboard Corp. v. Celotex Corp. (In re Celotex Corp.), 472 F.3d 1318, 1323 (11th Cir. 2006) (applying Florida law).
Georgia: "Equitable subrogation requires that a party show that (1) it paid a debt in order to protect its own interest, (2) it was not acting as a volunteer in making the payment, (3) it was not primarily liable for the debt, (4) the entire debt was paid, and (5) subrogation would not cause an injustice to the rights of third parties." In re CUA Autofinder, LLC, 387 B.R. 906, 913 (Bankr. M.D. Ga. 2008) (citations omitted)
Nevada: "Equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder." Mort v. United States, 86 F.3d 890, 894 (9th Cir. 1996) (applying Nevada law, but looking to California law for guidance).
Tennessee: "Under equitable subrogation, the following requirements must be met: (1) payment must have been made by subrogee to protect own interest; (2) subrogee must not have acted as a volunteer; (3) debt paid must be one for which subrogee was not primarily liable; (4) entire debt must have been paid; (5) subrogation must not work any injustice to rights of others." In re Southwest Equipment Rental, Inc., 193 B.R. 276, 283-84 (E.D. Tenn. 1996) (citation omitted).
Texas: "The test [for equitable subrogation] is as follows: (1) the claimant must have made payment to protect his own interests; (2) the claimant must not have been a volunteer; (3) the payment must satisfy a debtor for which the claimant was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not cause injustice to the rights of others." In re East Tex. Steel Facilities, Inc., 117 B.R. 235, 241 (Bankr. N.D. Tex. 1990) (citation omitted).

10

US2008 1085720.1

v. Porter Bridge Loan Co., Inc., 2009 WL 2105484 (Ala. 2009)(citing the elements listed in *Lawson* for equitable subrogation); and AOD Fed. Credit Union v. State Farm Fire and Cas. Co., 931 So.2d 31 (Ala. Civ. App. 2005)(explaining that a party's entitlement to equitable subrogation depends on that party's satisfaction of the five elements listed above). While failure to prove any one element is detrimental to a claim for equitable subrogation, the Court finds that Alphera has failed to satisfy four of the five required elements.

### 1. Alphera Did Not Advance Money At the Instance of the GMAC Debtors to Pay A Prior Encumbrance

26. The first element of equitable subrogation under Alabama law is that "the money is advanced at the instance of the debtor in order to extinguish a prior [e]ncumbrance. Lawson, 6 So.3d -at 12. This element has two components: (a) advancement of money to pay a debt, and (b) advancement at the instance of a debtor. Neither component is satisfied under the facts of this case.

#### a. Alphera Did Not Pay A Third Party Debt

27. The Liquidating Trustee contends that Alphera did not "advance money to pay a debt." While Alphera insists that the Sugar Land Settlement constituted a payment by Alphera to GMAC that was used to discharge part of the GMAC debt which was a liability of the GMAC Debtors, the Liquidating Trustee argues that Alphera made no "payment" because its property rights in the Contested Sugar Land proceeds were subject to dispute. Neither party was able to find any case directly on point. The Court finds that Alphera did not "pay" a debt of the GMAC Debtors by virtue of the settlement. A party seeking equitable subrogation must show that it paid the debt of a third party. Bonofiglio v. Hoey (In re Hoey), 364 B.R. 427, 432 (Bankr. S.D. Fla. 2005) (citing North v. Albee, 20 So.2d 682, 683 (Fla. 1945)). Equitable subrogation applies

US2008 1085720.1

when "one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." Frymire Eng'g Co. v. Jomar Int., Ltd., 259 S.W.3d 140, 142 (Tex. 2008) (quoting Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765, 774 (Tex. 2007)); see also Lawson, 6 So. 3d at 12 (citing Collateral Inv., 421 So. 2d 1274 (listing elements of equitable subrogation, the first being that "the money is advanced at the instance of the debtor in order to extinguish a prior [e]ncumbrance.")). The undisputed facts in this case do not show that Alphera has met this essential element of equitable subrogation.

28.      After being named by GMAC in the Sugar Land Proceeding, Alphera denied GMAC's position that GMAC's security interest had priority over Alphera's on the Contested Sugar Land Collateral, raised numerous affirmative defenses, and asserted various counterclaims against GMAC. Through the terms of the Stay Relief Order, Alphera liquidated the Sugar Land Debtor's assets, following which the proceeds from the sale of the Contested Sugar Land Collateral were placed in an escrow account pending resolution of disputes concerning entitlement to the proceeds. The Sugar Land Proceeding was commenced in order to litigate issues concerning the validity, priority and extent of each of GMAC's and Alphera's liens in the proceeds. Prior to any trial on the issues, Alphera and GMAC voluntarily reached a resolution of the Sugar Land Proceeding and split the proceeds in the escrow account. The parties embodied their resolution in an agreement approved by this Court. However, nothing in the agreement provided that the portion of the proceeds going to GMAC was unequivocally the property of Alphera, nor did the agreement provide for Alphera to assert any purported rights in collateral, and nothing in the associated motion to approve the Sugar Land Settlement gave such rights.

29.      It is not the law of this case that the Contested Sugar Land Collateral, let alone the amount retained by GMAC in the Sugar Land Settlement, was the undisputed property of

12

US2008 1085720.1

Alphera. While Alphera may have asserted a perfected security interest in all assets of the Sugar Land Debtor, GMAC challenged the extent and priority of the security interest in the Contested Sugar Land Collateral in the Sugar Land Proceeding. If GMAC's position was correct, any security interest Alphera could have claimed in the Contested Sugar Land Collateral, especially the portion of the proceeds that ultimately went to GMAC, would have been completely worthless.

30.     The Sugar Land Settlement prevented this Court from making any kind of ruling on the merits of Alphera's claims in the Sugar Land Proceeding. The Sugar Land Settlement documents included no admissions as to the proper party in interest of the Contested Sugar Land Collateral, and this Court made no determinations of each party's respective rights in the Contested Sugar Land Collateral. Absent a clear conclusion on the proper party to the funds received by GMAC, this Court cannot make a finding that GMAC's portion of the proceeds under the Sugar Land Settlement were properly Alphera's all along. Alphera may view itself as having "paid" $3.32 million to GMAC, but such a position assumes facts that lack any basis. What is undisputed is that Alphera and GMAC agreed to divide contested escrow proceeds. What is undisputed is that no determination was ever made that the funds that went to GMAC were the property of Alphera or subject to any valuable property interest of Alphera.

31.     The Sugar Land Settlement did not involve an advancement of Alphera's property.[4] The Sugar Land Settlement was an agreement to divide the proceeds of the Contested

---

[4] Alphera claims section 162 of the Restatement (First) of Restitution ("Section 162") is supportive of its claims to equitable subrogation. Section 162 is inapplicable to the facts of this case. Section 162 provides as follows:

> **Where property of one person is used** in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the oblige or lienholder.

US2008 1085720.1

Sugar Land Collateral in order to resolve a dispute. It allowed Alphera to receive a portion of the escrowed funds despite GMAC's claim to the entirety. Alphera did not extend funds, but merely agreed to a division at the risk of losing all claim to the proceeds to GMAC's asserted lien. Therefore, Alphera cannot claim to have paid a debt of the GMAC Debtors because it cannot be said to have advanced its own property to pay the debt of the GMAC Debtors. Alphera made a business decision to agree that GMAC would receive a portion of the funds in order to minimize litigation expense and avoid the risk of losing all claim to the Contested Sugar Land Proceeds. That decision does not give Alphera rights that it has never proved existed prior to execution of the Sugar Land Settlement.

32.     Alphera has failed to cite a single authority for the proposition that a division of contested proceeds between secured creditors affords a settling party the right to equitable subrogation. Under the facts and circumstances of these cases, the lack of a single supporting case underscores the impropriety of applying the doctrine of equitable subrogation here.

33.     A settlement agreement to divide disputed escrowed funds is not equivalent to payment of a debt of a third party and thus does not qualify for the first element of equitable subrogation. The doctrine of equitable subrogation is designed to protect parties who have actually given up property of value in order to discharge an obligation so that another party is not unjustly enriched at the parties' expense. If the property given up was of no value or the value was subject to dispute, the party incurred no ascertainable expense. Such failure is fatal to Alphera's equitable subrogation claim.

---

Restatement (First) of Restitution § 162 (emphasis added). As discussed supra, it has never been determined and cannot be determined that the portion of the proceeds that went to GMAC were the property of Alphera.

14

US2008 1085720.1

34.     Because Alphera has not paid any third party debt through the Sugar Land Settlement, there is no basis for Alphera to claim equitable subrogation.  On this basis alone, summary judgment against Alphera, and, by extension CB&T, may be granted.

### b. Alphera Was a Volunteer

35.     The words "at the instance of the debtor" in the first element of equitable subrogation as expressed under Alabama law embody the doctrine that a "volunteer" is not entitled to equitable subrogation.  See Lawson, 6 So. 3d at 12.  Alphera was a volunteer and stranger with respect to the GMAC Debtors' indebtedness to GMAC.  Alphera's volunteer or stranger status an independent reason why it fails to satisfy the first element of equitable subrogation.

36.     The doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another.  Bankers Trust Co. v. Hardy, 640 S.E.2d 18, 21 (Ga. 2007) (Bankers Trust was a mere volunteer with respect to Hardy's interest because it failed to obtain his legal consent to the transaction.).  A "volunteer, stranger, or intermeddler is 'one who thrusts himself into a situation on his own initiative, and not one who becomes a party to a transaction upon the urgent petition of a person who is vitally interested, and whose rights would be sacrificed did he not respond to the importunate appeal.'" Mort, 86 F.3d at 894 (citing Laffranchini, 153 P. 250).  A "volunteer" is one "who has paid the debt of another, without any assignment or agreement for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property of his own." Murray, 257 S.W.3d at 300 (citations omitted); Hubble v. Dyer Nursing Home, 188 S.W.3d 525, 538 (Tenn. 2006) ("A 'volunteer' or 'stranger' within this Rule is one who has no obligation or liability to

US2008 1085720.1

pay the debt and has no interest in the property affected by the debt."). "[I]n the absence of legal compulsion to pay the debt of another, voluntary payment of another's debt, absent fraud, accident, mistake, or by contract with the payee, does not entitle one to subrogation." Id. at 538 (citing Walker v. Walker, 200 S.W. 825 (Tenn. 1918)); see also Scott v. Land, Mortgage, Inv. & Agency Co., 28 So. 709, 710 (Ala. 1899) (lender is treated as a mere volunteer in a "case of ordinary borrowing").

37. The GMAC Debtors neither requested that Alphera settle with GMAC nor otherwise embroil themselves in the negotiations (in fact none of the GMAC Debtors were even named as parties in the Sugar Land Proceeding). The agreement to split the proceeds of the Contested Sugar Land Collateral was an agreement made exclusively between GMAC and Alphera. It was even asserted that "[n]o claimants other than Alphera and GMAC [hold] or claim any interest in or to the Inventory Proceeds, and the amounts owed by the Sugar Land Debtor to Alphera and GMAC far exceed the amount of the Inventory Proceeds." [See Consent Motion at ¶5]. The GMAC Debtors merely gave their consent to the settlement.

38. Alphera argues that the volunteer or "instance of the debtor" requirement is not applicable here because it was acting to protect an interest. See, e.g., Groom v. Fed. Land Bank of New Orleans, 199 So. 237, 239 (Ala. 1940) (indicating that "instance of the debtor" requirement is inapplicable to "one not under necessity to act to protect his own interest or rights"). However, this argument in unavailing. The Sugar Land Settlement had nothing to do with any property interest of Alphera in the GMAC Debtors. In the context of equitable subrogation a "'volunteer' or 'stranger' is one who has no obligation or liability to pay the debt and *has no interest on the property affected by the debt*." Hubble v. Dyer Nursing Home, 188 S.W.3d 525, 538 (Tenn. 2006) (emphasis added). The Sugar Land Settlement concerned

US2008 1085720.1

Alphera's contested security interest in the property of ***the Sugar Land Debtor***.  It had nothing to do with any interest Alphera had in the property of ***the GMAC Debtors*** affected by the GMAC debt.

39.     Alphera entered into the settlement voluntarily and willingly-- not at the urging of the GMAC Debtors.  The Debtors had no role in the Sugar Land Settlement other than giving the consent necessary for approval by the Bankruptcy Court.  See <u>AOD Fed. Credit Union v. State Farm Fire & Cas. Co.</u>, 931 So. 2d 31, 39-40 (Ala. Civ. App. 2005) (applying Alabama law and concluding that a required element of equitable subrogation was lacking when credit union "did not 'advance' money" on the debtor's behalf in order to pay off indebtedness); <u>Pilgrim</u>, 421 So. 2d at 1276 (denying equitable subrogation where court was unable to find "in the present case that the money was advanced at the instance of the debtor to satisfy the prior [e]ncumbrance.").  Lack of contract privity obligating the payment to GMAC defeats any purported "palpable interest" Alphera attempts to assert in the GMAC Debtors.

40.     The voluntary nature of the settlement is an additional reason why equitable subrogation is inappropriate here.  Alphera had the right to litigate the Sugar Land Proceeding, but voluntarily chose to resolve it.  One court has observed that "one who has ample opportunity to have his rights litigated and can utilize all processes of law to protect himself against an unwarranted demand, but chooses to compromise the claim, is not entitled to a right of recovery over by way of subrogation or indemnity, since payment thus made is not compulsory." <u>Willard v. Interpool, Ltd.</u>, 758 A.2d 684 (Pa. Sup. Ct. 2000) (citing <u>Tugboat Indian Co. v. A/S Ivarans Rederi</u>, 334 Pa. 15, 5 A.2d 153 (1939)).  Alphera's was not compelled to settle with GMAC, but made a voluntary business decision to settle.  Accordingly, Alphera cannot overcome its volunteer status.

US2008 1085720.1

**2. The Distribution of Proceeds from the Contested Sugar Land Collateral Was Not Used For The Purpose of Satisfying the GMAC Debtors' Indebtedness to GMAC. Alphera Had No Expectation of Obtaining Security of Equal Dignity With the Prior Encumbrance.**

41.     Equitable subrogation "manifestly require[s] more than the mere appropriation" of funds to the payment of a debt. <u>Pilgrim</u>, 421 So. 2d at 1276. The money must be used "in order to extinguish a prior [e]ncumbrance . . . with the just expectation on the part of the [party advancing funds] of obtaining a valid security." <u>Id.</u> The division of the Contested Sugar Land Proceeds under the Sugar Land Settlement was not accomplished for the purpose of extinguishing a prior encumbrance on the property of the GMAC Debtors. It was a settlement of a dispute between GMAC and Alphera concerning the priority of liens in the Contested Sugar Land Collateral. The Sugar Land Settlement agreement is void of any reference to Alphera's right to receive security of equal dignity with GMAC in the property of the GMAC Debtors in the event GMAC were to find itself oversecured. <u>See</u> Docket No. 1783. Instead, it provides that "the amounts owed by the Sugar Land Debtor to Alphera and GMAC far exceed the amount of the Inventory Proceeds." <u>Id.</u> at ¶ 5.

42.     Alphera's failure to make any disclosure in the motion for approval of the Sugar Land Settlement that it was seeking equal dignity with GMAC's collateral position in the GMAC Debtors is evidence that the parties had no such intent.[5] <u>See</u>, <u>e.g.</u>, <u>AOD Fed. Credit Union</u>, 931 So. 2d at 40 (finding element of equitable subrogation lacking where credit union "could have had no reasonable expectation that it would receive" an interest in the real property that had been occupied by the debtors); <u>Brunson</u>, 145 So. at 157 (finding that "complainant did not take its mortgage on block 4 embraced in Guaranty Association's mortgage, to which subrogation is here

---

[5]   The motion to approve the Sugar Land Settlement refers to a settlement agreement between GMAC and Alphera. That agreement was not filed – the only public document was the motion itself and a form of consent order that provides for a distribution to be made of the Contested Sugar Land Collateral in accordance with the agreement. <u>See</u> Docket No. 1785.

18

US2008 1085720.1

sought, but only on that portion of block 4 included in the Brunson mortgage, thus negating any intention of the parties that complainant should be treated as an equitable assignee of the Guaranty Association mortgage").

43.     GMAC did not name any Debtors in the Sugar Land Proceeding, and none ever sought to intervene.  Furthermore, neither the settlement agreement nor the underlying Consent Order indicated that Alphera was paying funds to GMAC with the intent of "standing in" GMAC's stead or to provide Alphera with a recovery against the GMAC Debtors' estates in the event that GMAC found itself oversecured.  Therefore, Alphera also fails to satisfy the second element of equitable subrogation.

### 3.     GMAC Has No Further Claims Against the Debtors' Estates

44.     GMAC has no further claims against the Debtors' estates and is now satisfied as a result, among other things, of the GM/GMAC Settlement.  Although Alphera can arguably meet this one element of equitable subrogation, it fails to satisfy all four others.

### 4.     Alphera was not ignorant of intervening interests in the GMAC Debtors.

45.     To warrant equitable subrogation, the requesting party must demonstrate that it was ignorant of intervening liens and interests of the collateral.  Whitson v. Metropolitan Life Ins. Co., 142 So. 564, 567-68 (Ala. 1932).  Alphera was aware of intervening interests in the GMAC Debtors due to the presence of these actions in Bankruptcy Court.  The Bankruptcy Code has specific priorities for creditors.  The extent of a secured claim is governed by section 506(a) of the Bankruptcy Code, which provides that a secured creditor's deficiency claim is treated as an unsecured claim.  Additionally, section 544(a) of the Bankruptcy Code grants the Debtors the rights of lien creditors as of the Petition Date.

US2008 1085720.1

46.     Alphera has been an active participant in the Debtors' cases since their inception and was fully aware that the rights of other secured creditors in the collateral of the GMAC Debtors, as well as the rights of unsecured creditors, were subject to the jurisdiction of the Bankruptcy Court when it entered into the Sugar Land Settlement.  In short, Alphera had actual knowledge of the rights of third parties when it entered into the Sugar Land Settlement.

47.     An analogous situation arose in <u>Ex Parte Lawson</u>, 6 So. 3d 7 (Ala. 2008), a case in which purchase money mortgagees were attempting to assert equitable subrogation to defeat the rights of materialmen.  The Supreme Court of Alabama held that "the constructive notice supplied by [Alabama's] materialman's lien statute defeats the lenders' equitable subrogation claim."  6 So. 3d at 14.  The court noted that "[t]he materialman's lien statutes 'are an expression of legislative intent that should stay the hand of equity in this situation.  If we held otherwise, we would violate the equitable maxim that equity follows the law.'" <u>Id.</u> (citation omitted).

48.     Recognizing the risks of litigation and understanding that the full portion of the Contested Sugar Land Collateral was at risk, Alphera made a calculated decision to enter into a settlement with GMAC.  This decision was made in the context of a bankruptcy case w`here the rights of creditors, secured and unsecured, are set forth in the Bankruptcy Code.  Allowing Alphera to now assert a claim to the extent of its overall deficiency to the detriment of unsecured creditors, the interests of whom Alphera was fully aware, would seriously interfere with the rights of these creditors and go against equity.

**5.     Equitable Subrogation Would Unfairly Burden the Rights of Creditors In These Cases**

49.     Had Alphera prevailed on the other elements discussed above, the Court would nevertheless find that equitable subrogation is not appropriate under the circumstances of this case because Alphera cannot satisfy the final element of equitable subrogation under Alabama

US2008 1085720.1

law which concerns prejudice to third parties. Subrogation should not be allowed where the exercise of such right will substantially prejudice the legal or equitable rights of another party. Byers v. McGuire Props., Inc., 679 S.E.2d 1, 7 (Ga. 2009); Dade County Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999); Fed. Land Bank of New Orleans v. Henderson, Black & Merrill Co., 42 So. 2d 829, 836 (Ala. 1949) (stating that in applying equitable subrogation, "[o]ne will not be permitted to secure an advantage to the prejudice of another"); Laffranchini, 153 P. at 252 (equitable subrogation is not "allowed so as to do injury to the rights of others"); Lawyers Title Ins. Corp. v. United Am. Bank, 21 F. Supp. 2d 785, 792 (W.D. Tenn. 1998). Application of equitable subrogation under the facts of this case would be unfairly prejudicial to unsecured creditors. Alphera's proposed relief will burden the rights of unsecured creditors by interposing new secured creditors (Alphera & CB&T) above their rights and would also dilute their recovery.

50.     The overall fairness of applying equitable subrogation should be assessed with a view to the purpose of the doctrine, which is to prevent unjust enrichment. If this goal is not accomplished, the doctrine should not be applied. See, e.g., Casstevens v. Smith, 269 S.W.3d 222, 228 (Tex. App. 2008) (refusing to apply equitable subrogation where it would not prevent unjust enrichment). The rights asserted by Alphera also must be weighed against the competing equities in this case and viewed from a perspective of what Alphera as the entity seeking subrogation could have done differently in this case. "'Equity rules are not absolute and competing equities must be considered in any subrogation-restitution situation. The subrogee must have clear equity and subrogation is defeated by countervailing equities.'" In re Hutchins, 400 B.R. 403, 414 (Bankr. D. Vt. 2009) (quoting Norfolk & Dedham Fire Ins. Co. v. Aetna Casualty & Surety Co., 318 A.2d 659, 661-62 (Vt. 1974)).

US2008 1085720.1

51.     The equities do not favor Alphera, who had the opportunity to continue litigating with GMAC over its rights in the Contested Sugar Land Collateral, but who chose to settle. Alphera assumed the risk that GMAC would be oversecured when it entered into the Sugar Land Settlement.  Having closed the chapter on the Sugar Land Proceeding, the fortuity of GMAC's agreement to have no further claims against the Debtors' estates and the existence of unencumbered assets should not be converted into a renewed opportunity for Alphera to relitigate the Sugar Land Proceeding or lay claim to additional funds. Alphera was in the best position to avoid the consequences it complains of now.  It was not forced to or compelled to settle with GMAC in the Sugar Land Proceeding.  Alphera's reference to the "equitable doctrine of marshaling" is especially telling.  One must question why Alphera failed to raise a marshaling claim against GMAC in the Sugar Land Proceeding.  Alphera did not do so, but instead chose to settle with GMAC.  It would be contrary to equity to subjugate the rights of the estates for Alphera's own failure to pursue potential counterclaims against GMAC.   See Equicredit Corp. v. Simms (In re Simms), 300 B.R. 877 (Bankr. S.D.W. Va. 2003)(finding that equitable subrogation will not be sued to benefit parties who were in the best position to protect themselves).

52.     Alphera's attempt to assert equitable subrogation rights on the basis of a final settlement order is an impermissible attempt to relitigate issues that should have been raised in the Sugar Land Proceeding.  The creditors in this case have relied on the finality of the Sugar Land Settlement, and only those rights explicitly set forth therein should be recognized, especially where such rights would impair the rights of creditors in these cases.  The creditors could not have foreseen that Alphera would attempt to reclaim the funds it agreed that GMAC would share from the Contested Sugar Land Proceeds.  Therefore, granting equitable subrogation

22

US2008 1085720.1

to Alphera would result in substantial prejudice to the creditors of these estates and result in all the efforts taken to date to be solely for the benefit of the secured creditors.

53.     The application of equitable subrogation in this case would create additional secured creditors with claims to collateral of the GMAC Debtors whose claims would then diminish the recovery to unsecured creditors of the Debtors' estates.  Nothing in Alphera and GMAC's pleadings filed concerning the Sugar Land Settlement specifically asserted that Alphera should be granted equal dignity with GMAC's liens merely by agreeing to split the proceeds of the Contested Sugar Land Collateral.  Accordingly, neither the Debtors, the Committee, nor any of the secured creditors anticipated that Alphera would attempt to assert rights of equitable subrogation pursuant to its settlement.  The Sugar Land Settlement was a resolution of the Sugar Land Proceeding and approved by an order of this Court.  Any attempt to impair the rights of third parties through the operation of the Sugar Land Settlement should have been explicitly reserved or asserted in the motion and order approving the Sugar Land Settlement, and the other creditors would have been given the opportunity to object and in all likelihood would have done so.

54.     There is no unjust enrichment in this case for equitable subrogation to prevent or remedy.   The instant dispute is unlike the typical equitable subrogation scenario wherein one party satisfies a debt of a debtor by payment to a secured creditor, and properly deserves to step into the shoes of the secured creditor whose claim it satisfied because the debtor would be unjustly enriched by retaining the benefits of the debt satisfaction.  This is not a case where an individual debtor has gained a windfall at the expense of another party's payment of that debtor's debt.  As explained earlier, Alphera made no "payment" here because its property rights in the Contested Sugar Land Proceeds were subject to dispute.  Moreover, the excess collateral here is

US2008 1085720.1

not going to the Debtors themselves, but going to the distribution to creditors of the Debtors' *estates*, many of whom are former employees of the Debtors who have waited over a year for any distribution. Under these facts, the Court cannot find that the fortuity of excess collateral after satisfaction of the GMAC indebtedness is unjust enrichment to the Debtors' estates. Therefore, equitable subrogation should not be applied.

55. Alphera's retrospective analysis of the Sugar Land Settlement fails to justify the significant dilution of the claims of creditors which would result from application of equitable subrogation in favor of Alphera. In a bankruptcy case, the rights and equities of multiple parties are at stake and to stretch the doctrine of equitable subrogation to the lengths desired by Alphera would work a gross inequity against other creditors of the Debtors' estates, both secured and unsecured. See Farmer v. LaSalle Bank (In re Morgan), 291 B.R. 795, (Bankr. E.D. Tenn. 2003) (refusing to allow creditor to use the doctrine of equitable subrogation to avoid effects of its failure to note lien on vehicle certificate of title where the interests of unsecured creditors were implicated). The relief requested by Alphera is beyond the purview of equity. As a matter of law, Alphera has no entitlement to equitable subrogation. Summary judgment on the Complaint in favor of the Liquidating Trustee is thus appropriate.

**CB&T is Not Entitled to Equitable Subrogation**

56. CB&T, through the Intervenor Complaint, also seeks to be equitably subrogated to GMAC's liens in the GMAC Debtors to the extent Alphera is equitably subrogation therein. However, as established above, Alphera has no right to equitable subrogation against the GMAC Debtors. Accordingly, CB&T has no such right against the GMAC Debtors by virtue of the LOCs issued in favor of Alphera. Significantly, Alphera's debt is not paid in full, and, therefore, CB&T would have no right to assert subrogation. Moreover, it should be noted that the Debtors

24

US2008 1085720.1

on whose behalf CB&T issued the LOCs are not included among the GMAC Debtors, the Defendants in this case.  Thus, there is a disconnect between the parties for whom CB&T allegedly paid a debt and the parties against which it desires to assert subrogation rights.  Finally, for the reasons explained above, granting subrogation to CB&T would work an injustice against the other creditors of these estates by granting it an unexpected security position where other parties had no anticipation that such rights would be asserted.  Accordingly summary judgment should also be granted in favor of the Liquidating Trustee as to the claims in the Intervenor Complaint.

A separate order will be entered consistent with this opinion.

**DONE and ORDERED** this day February 5, 2010

/s/  Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

US2008 1085720.1